UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROGETTE BAZOUZI,<br><br>    Plaintiff,<br><br>    v.<br><br>JEH JOHNSON, et al.,<br><br>    Defendants. | Case No.  14-mc-80261-JST<br><br>**ORDER GRANTING PETITION TO AMEND A NATURALIZATION CERTIFICATE**<br><br>Re: ECF Nos. 5, 12, 14 |

Currently before the Court is Petitioner Rogette Bazouzi's Petition to Amend Naturalization Certificate. ECF No. 1. Respondents Jeh Johnson, Secretary of the United States Department of Homeland Security and Leon Rodriguez, the Director of the United States Citizenship and Immigration Services ("Respondents"), have moved to dismiss the petition for lack of jurisdiction. ECF No. 5. Petitioner has opposed the motion and moved for summary judgment in favor of her petition. ECF No. 12. Respondents have in turn moved to stay Petitioner's motion for summary judgment pending the Court's ruling on the motion to dismiss. ECF No. 14.

**I.    Background**

Petitioner was born in Jaffa, Palestine. ECF No. 1, Declaration of Rogette Bazouzi ("Bazouzi Decl.") at ¶ 1. Petitioner lived in Jaffa throughout her childhood and remembers hiding in her basement during the bombings that began the 1948 war for independence of Israel. Id. at ¶ 2. To flee the violence in Palestine, Petitioner's parents took her aboard "a schooner with no known destination." Id. That boat docked in Port Said, Egypt, where officers lined up the passengers onboard and questioned them regarding their names and dates of birth before they disembarked. Id. Petitioner's parents were illiterate and responded that Petitioner's birthdate was not known, but offered a particular historical event "as a possible indication of" Petitioner's birth

date, which officers then designated as March 16, 1942. Id. Petitioner used that date going forward on all her identification documents. Id. at ¶ 3.

Decades later, when Petitioner immigrated to the United States in October of 1976 via a Form I-130 immigrant visa petition filed on behalf of her husband Elias Bazouzi, she listed her birthdate as March 16, 1942. Id. at ¶ 1.

In 1991, Petitioner's mother passed away in California. Id. at ¶ 5. Petitioner was her mother's only child and was responsible for sorting through all of her mother's belongings upon her death. Id. During this process, Petitioner found a certificate with her name and "the location and date of [her] birth," which listed that date as March 4, 1940. Id. Upon finding the certificate, Petitioner "searched for ways to address" the fact that all of her identifying documents contained an incorrect date. Id. at ¶ 6. Petitioner corrected her birthdate with the Social Security Administration and believed such correction "was all that really needed to be done since [her] Social Security Number affected all [her] other U.S. identity documents." Id. Petitioner only learned that this was not true when she recently set to change the date of birth on her driver's license and was told that she could not because her naturalization certificate indicated she was born in 1942. Id.

Petitioner's husband was recently diagnosed with cancer and Petitioner has observed throughout his chemotherapy that "doctors, hospitals, health insurance companies, and others" often ask him for his birth date. Id. at ¶ 7. Petitioner fears that, if hospitalized, she could be accused of stealing another individual's identity as a result of the discrepancies between her identification documents. Id. Moreover, Petitioner fears that the conflict between her identification documents could potentially cause complications for her children after she passes away. Id.

## II. Jurisdiction

Respondents have moved to dismiss the petition for lack of subject matter jurisdiction. ECF No. 5. Petitioner states that "[j]urisdiction over the subject matter of this action is conferred on this Court by 8 C.F.R. § 3316 and the prior 8 U.S.C. § 1451(i)."

The Ninth Circuit has concluded that, pursuant to section 1451(i), district courts have

jurisdiction to amend naturalization orders issued prior to the enactment of the Immigration and Naturalization Act of 1990.  Matter of Shrewsbury, 77 F.3d 490, 1996 WL 64988 at *1 (9th Cir. 1996).[1]  Before the 1990 Act, "district courts had jurisdiction to naturalize citizens and also had statutory authority to amend naturalization orders."  Id.  Although in the 1990 Act "Congress transferred the authority to naturalize citizens from the judiciary to the Attorney General," courts retained "jurisdiction under the prior statute to amend" court orders of naturalization that predated the 1990 Act.  Id. (citing 8 U.S.C. § 1451(i)); see also McKenzie v. USCIS, 761 F.3d 1149, 1153 (10th Cir. 2014).

Petitioner was naturalized by the United States District Court for the Northern District of California on February 16, 1982, prior to the effective date of the 1990 Act.  The Court therefore possesses subject matter jurisdiction over this petition.

### III. Legal Standard and Motion to Dismiss for Lack Of Jurisdiction

The parties dispute what legal standard should govern the resolution of Petitioner's application to amend her naturalization certificate.  Petitioner argues that the Court should follow a line of cases in this District granting amendment in cases where "petitioners provided unequivocal evidence as to the true dates of birth and that there was no evidence of fraud or prejudice to the government."  Binh Quang Le, 2011 WL 3678909, at *2; see also In re Lee, 2007 WL 926501, at *2-3.  Respondents argue that the Court should instead resolve the petition under Federal Rule of Civil Procedure 60, which governs requests for "Relief from a Judgment or Order."  ECF No. 5 at 4-5 (citing Magnuson v. Baker, 911 F.2d 330, 335 n. 11 (9th Cir. 1990)).

---

[1] Although Respondents do not attempt to distinguish Shrewsbury, they emphasize that it is an unpublished decision.  Nonetheless, it has been cited by numerous courts in this District for the proposition this Court has subject matter jurisdiction over the amendment of pre-1990 naturalization orders.  See Yeshiwas v. U.S. Citizenship & Immigration Servs., No. 12-cv-1719-PJH, 2013 WL 5289061, at *5 (N.D. Cal. Sept. 19, 2013); In re Chehrazi, No. 12-cv-80110-WHA, 2012 WL 3026537, at *2 (N.D. Cal. July 24, 2012); Kennedy v. U.S. Citizenship & Immigration Servs., 871 F. Supp. 2d 996, 1007 (N.D. Cal. 2012); In re Mohammad Atiq Taymuree, No. 09-cv-3420 CRB, 2009 WL 3817922, at *2 (N.D. Cal. Nov. 12, 2009); In re Lee, No. 06-cv-80150 MISC MJJ, 2007 WL 926501, at *2 (N.D. Cal. Mar. 26, 2007); Binh Quang Le v. U.S. Citizenship & Immigration Servs., Dist. Dir., No. 11-cv-01871 HRL, 2011 WL 3678909, at *1 (N.D. Cal. Aug. 22, 2011).

Because Respondents argue that Petitioner cannot show she is entitled to relief under Rule 60, they ask the Court to dismiss the petition for lack of jurisdiction.

Although not cited by Respondents, one court in this District has applied Rule 60 in the context of petitions to amend the date of birth on a naturalization certificate. Yeshiwas v. U.S. Citizenship & Immigration Servs., No. C 12-1719 PJH, 2013 WL 5289061, at *7 (N.D. Cal. Sept. 19, 2013). That court looked to the Ninth Circuit's decision in Magnuson, which it read as recognizing "Rule 60(b) as the appropriate procedural vehicle for setting aside a naturalization order pursuant to former 8 U.S.C. § 1451(i) under the prior version of the Immigration and Nationality Act." Id. The Yeshiwas court acknowledged that the Ninth Circuit in Shrewsbury "recognized the court's inherent authority under that statute to amend its own naturalization orders issued prior to 1990, without necessarily requiring that a motion be brought under Rule 60," but read the Ninth Circuit's decision in Magnuson as establishing "Rule 60(b) as the applicable rule of procedure for amending a pre–1990 order of naturalization certificate issued by the court." Id. (citations omitted).

The Court disagrees with the reading of Magnuson advanced in Yeshiwas. First, nothing in the Magnuson decision established Rule 60(b) as the exclusive "appropriate procedural vehicle for setting aside a naturalization order pursuant to former 8 U.S.C. § 1451(i) under the prior version of the Immigration and Nationality Act." Yeshiwas, 2013 WL 5289061, at *7. Second, and relatedly, Magnuson involved an entirely different factual scenario: the Secretary of State's attempt to revoke a citizen's passport. 911 F.2d 330. The court concluded that Congress intended "to treat passports in the same manner as certificates of citizenship or certificates of naturalization in all respects." Id. at 334. Discussing the comparable authority of a naturalization court to revoke a citizenship judgment, the Magnuson court noted that Congress had "strictly limited" the grounds supporting revocation to "proof of concealment of a material fact, willful misrepresentation, or procurement in violation of law." Id. at 335. In a footnote, the court acknowledged that the judgment of citizenship may also be altered pursuant to 8 U.S.C. § 1451(i), the statute governing revocation of naturalization, which "grants courts the inherent authority to set aside judgments for any reason cognizable under Federal Rule of Civil Procedure 60." Id. at

4

335, n. 11.  Despite this alternate potential basis of judicial authority to revoke citizenship, the court reasoned that such authority may be exercised "in only a few exceptional circumstances" because of the importance of the right of American citizenship.  Id.  Because of equitable considerations specific to the revocation of citizenship, the court observed that the summary procedure of Rule 60 should be used sparingly.  The Court does not believe that amending a naturalization order to reflect a petitioner's correct birth date involves these equitable considerations.

Third, Shrewsbury was decided six years after Magnuson.  It was therefore impossible for Magnuson to have limited Shrewsbury's scope, as the Yeshiwas court suggests.  To the contrary, the Shrewsbury court's failure even to mention Magnuson casts doubt on Yeshiwas's – and the government's – gloss on the relationship between the two cases.

Fourth, the Court does not believe that amending an order to reflect the correct birthdate involves "setting aside" or "granting relief" from the order of naturalization at all.

The Court will therefore join the majority of courts in this District who have considered such a petition and have allowed amendment where the petitioner has presented clear evidence of her true date of birth and there are no concerns that petitioner acted fraudulently in representing her date of birth in her initial naturalization petition.  See Binh Quang Le, 2011 WL 3678909, at *2; In re Lee, 2007 WL 926501, at *2-3; In re Chehrazi, 2012 WL 3026537, at *3; In re Mohammad Atiq Taymuree, 2009 WL 3817922, at *2 (finding correction merited "upon a finding of an honest mistake made by the petitioner seeking amendment" where petitioner had "submitted material establishing a prima facie case" supporting a the amended date).[2]  One of these courts has endorsed the standard articulated by a court in the District of Minnesota, which has held that such

---

[2] Another court in this District has addressed the question of amending birth dates on naturalization certificates and observed that some courts have used an "unequivocal evidence" standard, while others have used the "clear and convincing" standard.  Kennedy, 871 F. Supp. 2d at 1008.  That court concluded there was little difference between the standards, and, under either, "the evidentiary standard applied . . . is a high one" because "naturalization certificates are important documents on which government and private entities rely" and "naturalization records may hasten the availability of government benefits for senior citizens."  Id.  This decision also did not reference Rule 60 in its discussion of the standard applicable for a birth date amendment.

5

petitions should be granted in cases where "(1) there is clear and convincing evidence that the birth date on the certificate of naturalization is wrong; (2) there is little or no evidence that the petitioner acted fraudulently or in bad faith either when he or she initially provided the incorrect birth date to immigration authorities or when he or she later sought to amend the certificate of naturalization; and (3) there is reliable evidence supporting the birth date that the petitioner now alleges is correct." In re Chehrazi, No. C 12-80110 WHA, 2012 WL 3026537, at *3 (N.D. Cal. July 24, 2012) (quoting Hussain v. U.S. Citizenship & Immigration Servs., 541 F. Supp. 2d 1082, 1087 (D. Minn. 2008)).

None of these decisions reference Rule 60. This makes sense, because in cases where the petitioner did not act fraudulently at the time of her application and new, better evidence regarding her date of birth has been uncovered subsequently, there is little reason to hold her to Rule 60's stringent standards for "Relief from a Judgment or Order." For instance, Respondents in this case argue that Petitioner's application would fail under Rule 60 because "no clerical error is at issue" under Rule 60(a), Petitioner did not file her Petition within a year of learning her correct birthdate under Rule 60(b), and this situation does not qualify under Rule 60(d) as an independent action to set aside a "grave miscarriage of justice." ECF No. 5 at 5-7. It is understandable that alteration of the outcome of a court judgment should be limited to such narrow circumstances, for the purposes of finality. For instance, as the Magnuson court recognized, substantial finality interests would be implicated by a court's setting aside of an order amending a decision to naturalize a citizen, as citizens have a significant interest in not having "the precious right of American citizenship" revoked after once conferred upon them. 911 F.2d at 335, n. 11.

But Respondents have not advanced any finality considerations that would weigh against Petitioner's requested amendment and have not even articulated any prejudice that anyone would suffer by virtue of such amendment. They have not argued that Petitioner's proposed amendment would entitle her to further government benefits – and indeed it appears that it would not, as her 1940 birthdate has already been accepted by the Social Security Administration. See Kouanchao v. U.S. Citizenship & Immigration Servs., 358 F. Supp. 2d 837, 839 (D. Minn. 2005) (holding that petitioner should be permitted to amend birth date on naturalization certificate where "he will not

1   gain additional government benefits," as "the Social Security Administration has already
2   accepted" his amended birth date).  In contrast, Petitioner has alleged substantial prejudice that
3   would result from the Court's denial of her petition.  Petitioner has already changed her birth date
4   with the Social Security Administration and fears that the conflict between her identity documents
5   reflecting the birth date on her naturalization certificate and her Social Security paperwork could
6   result in difficulties in obtaining medical treatment or passing on benefits to her children.  ECF
7   No. 1. at ¶ 14.  These legitimate concerns weigh heavily against any unarticulated finality
8   concerns that would support requiring petitioner to meet Rule 60's narrow requirements.

9   Therefore, the Court adopts the test a majority of courts in this District have used in
10  evaluating petitions to amend a birth date on a naturalization certificate.  The Court will apply the
11  standard that amendment is allowed so long as the petitioner presents clear evidence of her true
12  date of birth and there is little to no evidence indicating that petitioner acted fraudulently in
13  representing her date of birth in her initial naturalization petition.  See, e.g., Binh Quang Le, 2011
14  WL 3678909, at *2.  This test properly guards against fraud and ensures the accuracy of any
15  alterations, but does not set an unduly burdensome standard for petitioners seeking to navigate the
16  already byzantine procedures that govern the amendment of official documents.  Respondents'
17  motion to dismiss is therefore denied.

## IV.     Motion to Hold Summary Judgment in Abeyance

19  Petitioner has moved for summary judgment, ECF No. 12, and Respondents have moved
20  to hold the Petitioner's motion for summary judgment in abeyance pending a ruling on the motion
21  to dismiss.  ECF No. 14.  The motion to dismiss now having been resolved, the only basis for
22  holding Petitioner's motion in abeyance at this time would be "to permit Respondents to engage in
23  discovery pursuant to Federal Rule of Civil Procedure 56(d)."  ECF No. 14 at 3.

24  Rule 56(d) reads:

> When Facts Are Unavailable to the Nonmovant. If a nonmovant shows by affidavit
> or declaration that, for specified reasons, it cannot present facts essential to justify
> its opposition, the court may:
> (1) defer considering the motion or deny it;
> (2) allow time to obtain affidavits or declarations or to take discovery; or

7

(3) issue any other appropriate order.

Respondents have filed the Declaration of J. Max Weintraub, ECF No. 14-1, which states that no discovery has been taken and that "[w]ithout discovery, Respondents cannot determine which facts underlying Petitioner's claims are, in fact, undisputed." Respondents do not state what discovery they intend to take or otherwise take any position regarding the validity of the Palestinian birth certificate submitted by Petitioner as Exhibit C to her petition. ECF No. 1 at 16-18. Respondents have not met the requirements of Rule 56(d), as they have not stated "specified reasons" that they "cannot present facts essential to justify [their] opposition" at this time.

Moreover, Respondents have cited no authority in support of the claim that they are entitled to discovery in opposing a petition to amend a naturalization certificate. The cases from this District granting such petitions did so with no more briefing than has occurred in this case and no formal discovery. For instance, in Chehrazi, No. 12-mc-80110-WHA, Petitioner filed a petition, ECF No. 1, Respondent moved to dismiss for lack of jurisdiction, ECF No. 4, and the Court granted the petition following the submission of the briefing on the motion to dismiss. ECF No. 9. See also In re Mohammad Atiq Taymuree, No. 09-cv-03420-CRB; In re Lee, No. 06-mc-80150-MJJ; Binh Quang Le, No. 11-cv-01871-HRL.[3]

Because Respondents have not met their burden to show that Rule 26(d) relief is merited to allow them to discover facts necessary to their opposition, their motion to hold the petition in abeyance is denied.

**V.    Motion for Summary Judgment**

Turning to the merits of the petition, the Court finds that it satisfies the standard for amendment.

**A.    Evidence of Correct Birthdate**

Petitioner has provided sufficient evidence that the birthdate on her naturalization certificate is incorrect and that she was born on March 4, 1940. Petitioner has submitted a

---

[3] Likewise, the two cases from this District denying such petitions also did so after a similar amount of briefing as has already occurred in this case. See Yeshiwas, No. 12-cv-1719-PJH; Kennedy, No. 12-cv-02407-EJD.

8

1   declaration stating that, while going through her late mother's belongings, discovered the
2   certificate which stated her name, her parents' names, and the location and date of her birth.
3   Bazouzi Decl. at ¶ 5.  Petitioner has submitted that a copy of the original birth certificate and an
4   English translation which states that her birthdate was March 4, 1940.  ECF No. 1 at 16-18.  See
5   Chehrazi, 2012 WL 3026537, at *3 (crediting a translated birth certificate as reflecting a
6   petitioner's correct birth date).  Because this certificate appears to have been prepared
7   contemporaneously with Petitioner's birth, there is a high likelihood that it recorded Petitioner's
8   birthdate accurately.

9   In contrast, although Petitioner's naturalization certificate reflects her birthdate as March
10  16, 1942, Petitioner has provided facts casting doubt on the accuracy of this birthdate.  Petitioner
11  states that this date was assigned to her in Port Said, Egypt after her family had fled violence in
12  Palestine.  Bazouzi Decl. at ¶ 2.  Petitioner states that because her family was illiterate and could
13  not recall her precise birthdate, her birthdate was determined by authorities at Port Said by
14  reference to an event that occurred around the time of her birth.  Id.  After being assigned this
15  birthdate, Petitioner used it on official documents until finding her birth certificate among her late
16  mother's belongings in 1991.  Id. at ¶ 5.

17  Finally, Petitioner has stated in declaration that her employer and the Social Security
18  Administration have both already changed her birthdate to March 4, 1940.  Bazouzi Decl. at ¶ 6.
19  The Social Security Administration's acceptance of this date as Petitioner's birthdate further
20  supports its accuracy.

21  The Court concludes that Petitioner has submitted sufficient evidence to demonstrate that
22  Petitioner's correct birthdate is March 4, 1940.

23  **B.    Absence of Fraud**

24  The Court also is satisfied that the record does not reflect any signs of fraudulent activity
25  by Petitioner.  Petitioner states that she was not aware of that any birth certificate existed when she
26  used the March 16, 1942 date to receive identification documents.  Petitioner was told at a young
27  age that this was her birthdate and used it consistently throughout her life until she located the
28  birth certificate, at which time she sought to amend her birthdate with her employer and the Social

Security Administration.  See Chehrazi, 2012 WL 3026537, at *3 (Petitioner having put "great effort into having her birth date corrected" was evidence she was "acting in good faith").

Although Respondents allege that Petitioner was negligent for "waiting more than two decades to seek to amend her certificate," ECF No. 5 at 8, Petitioner has stated she believed her efforts to amend her birthdate with the Social Security Administration would have amended her birthdate for the purpose of all government documents.  Bazouzi Decl. at ¶ 6.  The Court finds this credible.  The process for seeking amendment of a naturalization certificate is not self-evident to a layperson and was even contested by Respondents in this litigation.  Moreover, even if Petitioner was negligent in altering her birthdate, such negligence would not rise to the level of fraud that would merit denying amendment.

There is no evidence Petitioner acted fraudulently in procuring her naturalization certificate.

**VI.    Conclusion**

The petition to amend Petitioner's naturalization certificate is hereby granted.[4]

IT IS SO ORDERED.

Dated: May 1, 2015

_____
JON S. TIGAR
United States District Judge

---

[4] At the hearing, counsel for Respondents also argued that Petitioner had failed to establish a basis for the federal government's waiver of its sovereign immunity.  See Collins v. U.S. Citizenship & Naturalization Serv., No. CV 11-9909-JFW SSX, 2013 WL 764752, at *2 (C.D. Cal. Jan. 30, 2013).  The Court will not consider this argument, because it was raised for the first time at the hearing.  White v. FedEx Corp., No. C04-00099 SI, 2006 WL 618591, at *2 (N.D. Cal. Mar. 13, 2006); Day v. Sears Holdings Corp., 930 F. Supp. 2d 1146, 1168 n.84 (C.D. Cal. 2013).